UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



RAYMOND C. PAN,

        Plaintiff,

    v.

CITY OF NIAGARA FALLS, COUNTY
OF NIAGARA, STATE OF NEW YORK,
NIAGARA FALLS WATER BOARD,
NELNET,

        Defendants.

20-CV-1896 (JLS)

## DECISION AND ORDER

*Pro se* plaintiff Raymond Pan filed an amended complaint against Defendants

City of Niagara Falls, County of Niagara, State of New York, Niagara Falls Water

Board, and Nelnet. Dkt. 19. He asserts negligence claims and claims under Section

1983—alleging that Defendants violated his constitutional rights. Dkt. 19, at 1.

The Court previously granted Pan permission to proceed *in forma pauperis*—that is,

without paying the filing fee. Dkt. 6. Therefore, the Court now screens Pan's

amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). Because

the amended complaint fails to present any "colorable claim[s]," it must be

dismissed. *See Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990).

## BACKGROUND

### I.     THE AMENDED COMPLAINT

According to Pan's allegations, Defendants New York State, City of Niagara

Falls, County of Niagara, and Niagara County Water Board have continuously

violated his constitutional rights[1] and committed negligence "in about 200 incidents." Dkt. 19, at 5. He alleges an Equal Protection violation against the City of Niagara Falls. *Id.* According to Pan, in 2003, he noticed that Niagara Falls assessed properties at 100% of market value. *Id.* He contacted Dominic Penale, the City of Niagara Falls' Assessor, to request that his properties also be assessed at market value. *Id.* Penale told Pan to come to the assessment hearing in front of the New York Board of Real Property Services. *Id.* At the hearing, Penale lowered the assessed values of "quite a few" white owners' properties to between 38% to 50% of their purchased price—even though they did not attend the hearing or "present the appraisal to Penale to prove 38% to 50% of their purchased price is the market value." *Id.* The assessed value for most properties owned by Pan, who is Asian American, remained higher than 100% of the purchased price. *Id.*

In 2004, according to Pan, Penale secretly lowered the assessed value of a white owner's property from $55,000 to $38,200. *Id.* at 8. To cover his wrongdoing, Penale changed the official records to show the previous assessed value as $22,100, rather than $55,000. *Id.* Pan continued to attend the assessment hearings every May, except for two or three years between 2010 and 2013. *Id.* at 7. At these hearings, Penale, and later his successor, had the option to stipulate to the assessed value, but did not. *Id.* Penale also alleges other complaints about the assessment hearings, such as officials giving him only ten minutes to dispute all his properties,

---

[1] Pan alleges violations of his Fifth, Eighth, and/or Fourteenth Amendment rights. Dkt. 19, at 1. He also alleges that Defendants violated the Supremacy Clause. *Id.*

rather than ten minutes for each property. *Id.* At the assessment hearing in 2020, the hearing officers asked Pan questions that they have not asked to white property owners, such as whether he improved his properties. *Id.* at 11.

Pan then lists various grievances he has with the City of Niagara Falls' property taxes. Pan claims that the City gave white owners grants, such that "the annual property tax for Asian American Property Owners is 1,000 to 2,500 times more" than that paid by white property owners. *Id.* at 44. He further alleges that City of Niagara Falls officials "abused the city's money . . . and have abused millions of dollars of the city's tax money," thus causing a large financial deficit. *Id.* at 49. Because of this financial deficit, city officials "have passed on the deficit, and implemented the non-feasible property tax law." *Id.* at 50. Pan also alleges that the Niagara Falls Water Board has "been committing price gouging" when installing water meters for property owners. *Id.* at 47.

Pan seeks an assortment of relief. *See* Dkt. 19, at 55–58. He requests a court order preventing the City of Niagara Falls and Niagara County from foreclosing his properties, an order requiring New York State to set up a "fiscal control board" in Niagara Falls, several orders requiring various changes in the City of Niagara Falls' tax laws, and an order directing the FBI to investigate the allegations in his complaint. *Id.* at 55–57. Additionally, Pan seeks $7,136,000 in actual damages, and $1,400,000,000 in punitive damages. *Id.* at 57. If he does not receive a judgment in excess of his federal student loan debt, Pan also requests that the Court "write off the total balance of [his] federal student loan." *Id.* at 58.

3

## II.    LEGAL STANDARD

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  A court shall dismiss the complaint if it determines that the action (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  As the Second Circuit has noted, "[s]ua sponte dismissal of a *pro se* complaint prior to service of process is a draconian device which is warranted only when the complaint lacks an arguable basis either in law or in fact [or is] frivolous on its face or wholly insubstantial." *Benitez*, 907 F.2d at 1295 (citations omitted).

Generally, courts will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).  But leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

4

## DISCUSSION

## I.   THE ELEVENTH AMENDMENT BARS PAN'S CLAIMS AGAINST NEW YORK STATE

The Eleventh Amendment "precludes suits against states and their agencies

unless the state expressly waives its immunity or Congress abrogates that

immunity." *Hahn v. New York*, 825 F. App'x 53, 54 (2d Cir. 2020) (citations

omitted); *see Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009).   New York has

not waived its immunity from Section 1983 claims in federal court.   *See Mamot v.*

*Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New

York has not consented to § 1983 suits in federal court.") (citing *Trotman v.*

*Palisades Interstate Park Comm'n*, 557 F.2d 35, 38–40 (2d Cir. 1977)).   Nor

has Congress abrogated state immunity for claims under Section 1983.   *See, e.g.,*

*Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (citing *Quern v.*

*Jordan*, 440 U.S. 332, 340–42 (1979)).   Therefore, Pan's claims against New York

State are barred by the Eleventh Amendment and must be dismissed.[2]   *See* 28

U.S.C. § 1915(e)(2); *Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*,

493 F. Supp. 3d 239, 246 (S.D.N.Y. 2020) ("A claim that is barred by a state's

---

[2] Although not named as Defendants in this suit, if Pan intended to bring claims against any New York State agencies, such as the New York Board of Real Property Services, the Eleventh Amendment bars those claims as well.   *See Walker v. City of Waterbury*, 253 F. App'x 58, 60 (2d Cir. 2007) ("The Eleventh Amendment entitles states to sovereign immunity, and this immunity extends . . . to entities considered arms of the state such as state agencies.") (internal citations and quotation marks omitted).

sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction.").

## II.   THE COURT LACKS JURISDICTION OVER PAN'S STATE-LAW NEGLIGENCE CLAIMS

Pan also alleges state-law negligence claims against the municipal Defendants. Under New York law, a notice of claim is a condition precedent to bring a tort action against a municipality. *See* N.Y. Gen. Mun. Law § 50-e ("In any case founded upon tort" against a municipality, a notice of claim shall be served "within [90] days after the claim arises."). Notice of claim requirements "are construed strictly by New York state courts." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citation omitted). Thus, failure to comply with these requirements "ordinarily requires a dismissal for failure to state a cause of action." *Id.* at 794; *see Greenland v. Municipality of Westchester Cnty.*, No. 18-CV-3157 (KMK), 2020 WL 4505507, at *6 (S.D.N.Y. Aug. 4, 2020) ("Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice.") (citation omitted).

Here, Pan does not allege that he served a notice of claim on any of the municipal Defendants. *See* Dkt. 19. Accordingly, his state-law negligence claims must be dismissed. *See Allen v. Antal*, 665 F. App'x 9, 14 (2d Cir. 2016) (dismissing negligence claim against county employee where plaintiff failed to timely file notice of claim); *Greenland*, 2020 WL 4505507, at *6 ("Because Plaintiff failed to

6

affirmatively plead that he filed a notice of claim with respect to any state law
claims, those claims are dismissed.").

## III.   PAN'S SECTION 1983 CLAIMS MUST BE DISMISSED

Pan also alleges claims under Section 1983 against the City of Niagara Falls,
County of Niagara, and Niagara Falls Water Board.  Dkt. 19, at 1.  While the failure
to file a notice of claim precludes Pan's state-law tort claims, it does not preclude his
Section 1983 claims against the municipal Defendants.  *See Hardy*, 164 F.3d at 793
(stating the general rule that "in a federal court, state notice-of-claim statutes apply
to state-law claims"); *Kearse v. Aini*, No. 19-CV-6429-FPG, 2019 WL 3343409, at *4
(W.D.N.Y. July 25, 2019) ("New York's notice of claim requirement is inapplicable to
Plaintiff's § 1983 claims, but is a condition precedent to any state-law claim she
may intend to bring.").  However, because the Tax Injunction Act and principles of
comity preclude this Court from granting the relief Pan seeks, his Section 1983
claims against the municipal Defendants must be dismissed.

### A.   Tax Injunction Act

The Tax Injunction Act prohibits federal courts from issuing injunctive or
declaratory relief in challenges to state tax laws if state remedies are adequate.
*Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 400 (2d Cir.
1992); 28 U.S.C. § 1341.  Relatedly, the principle of comity "prevents a taxpayer
from seeking damages in a § 1983 action if a plain, adequate, and complete remedy
may be had in state court."  *Bernard v. Vill. of Spring Valley, N.Y.*, 30 F.3d 294, 297
(2d Cir. 1994) (quoting *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d

7

428, 431 (2d Cir. 1989) ("*LILCO*")); *see Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981) (holding the principle of comity bars taxpayers from asserting § 1983 actions against the validity of state tax systems in federal courts); *Casciani v. Town of Webster*, 501 F. App'x 77, 80 (2d Cir. 2012) ("Actions under § 1983 seeking damages related to the collection of state taxes are barred by the principle of comity so long as there is a procedurally adequate state alternative procedure for challenging the assessment."). Similarly, "comity precludes federal jurisdiction over § 1983 challenges to a city's administration of its fiscal programs." *Bernard*, 30 F.3d at 297.

There "is 'no significant difference' between the 'plain, speedy and efficient' standard set forth in the Tax Injunction Act and the 'plain, adequate, and complete' standard governing comity." *LILCO*, 889 F.2d at 431 (quoting *Fair Assessment*, 454 U.S. at 116 n.8). A state remedy "is plain, speedy and efficient if it is procedurally adequate." *LILCO*, 889 F.2d at 431. "New York has procedurally adequate mechanisms for challenging tax assessments . . . ." *Casciani*, 501 F. App'x at 80; *see also Glob. Leadership Found. v. City of New York*, No. 21CV10942 (DLC), 2022 WL 3701082, at *2 (S.D.N.Y. Aug. 26, 2022) ("The Second Circuit has found that New York 'provides several remedies' permitting constitutional challenges to property taxes, and that these remedies satisfy the TIA and comity doctrine's procedural requirements.") (citing *LILCO*, 889 F.2d at 431); *Miller v. State of New York Div. of Tax Appeals*, 480 F. Supp. 2d 574, 579 (E.D.N.Y. 2007) ("The Supreme Court has

8

determined that New York provides sufficient remedies for taxpayers in the state courts.") (citing *Tully v. Griffin, Inc.*, 429 U.S. 68, 75 (1976)).

According to Pan, the City of Niagara Falls has abused millions of dollars in taxpayer money—creating a significant financial deficit. Dkt. 19, at 49–53. As a result, City of Niagara Falls officials implemented "non-feasible property tax law to the property owners." *Id.* at 50. Thus, he seeks an order directing New York State to set up a fiscal control board to stop city officials from abusing taxpayer dollars. *Id.* at 51. Pan also seeks compensatory and punitive damages. *Id.* at 57. In essence, Pan seeks orders from this Court directing the City to rewrite its tax code. *See id.* at 55–57.

The Supreme Court "has interpreted the [Tax Injunction Act] as prohibiting only those challenges to state tax schemes that would inhibit state collection of taxes, as opposed to those that would increase taxes a state could collect." *Joseph v. Hyman*, 659 F.3d 215, 218 (2d Cir. 2011). Here, "the most obvious way to achieve parity would be to reduce [Pan's] tax liability"—which relief Pan apparently seeks, in requesting compensatory damages. *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 429 (2010). The Tax Injunction Act prohibits the Court from issuing such relief. *See id.* And Pan's "more ambitious solution would reshape the relevant provisions of [the City's] tax code." *See id.* In issuing such relief, the Court "would engage in the very interference in state taxation the comity doctrine aims to avoid." *Id.* (citations omitted).

9

Therefore, because "procedurally adequate state remedies, such as a § 1983 action in state court, are available to [Pan], his constitutional objections to the [City's] tax assessment should be lodged in state court, not federal court." *Bernard,* 30 F.3d at 297. For these reasons, the Court lacks jurisdiction over Pan's Section 1983 claims challenging his property assessments and the City's tax administration scheme.[3] *See Terminello v. Vill. of Piermont,* No. 08CV01056WCCDCP, 2009 WL 3496615, at *2 (S.D.N.Y. Oct. 28, 2009) (holding that the Tax Injunction Act and

---

[3] Even if the Tax Injunction Act and principles of comity did not deprive this Court of jurisdiction over Pan's Section 1983 claims, he still fails to state a claim. Most of the events alleged in the amended complaint occurred outside the statute of limitations. *See Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013) ("Section 1983 actions filed in New York are subject to a three-year statute of limitations."). And Pan's apparent attempt to invoke the continuing violation doctrine is unavailing because he fails to allege a *continuous practice and policy of discrimination. See Fahs Const. Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013) ("[W]here a plaintiff challenges a continuous practice and policy of discrimination . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."). To trigger this doctrine, "the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Id.* Pan fails to allege an ongoing policy of discrimination. To the extent he alleges that preferential treatment for white property owners suffices, merely asserting a municipal custom or policy "is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Montero v. City of Yonkers, New York,* 890 F.3d 386, 403–04 (2d Cir. 2018) (internal quotation marks and citation omitted). Similarly, Pan fails to establish that the municipal Defendants are subject to liability. To hold a municipality liable in a Section 1983 action, "a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.,* 615 F.3d 129, 140 (2d Cir. 2010). Thus, Pan's failure to allege that an official policy or custom caused the alleged violations of his constitutional rights is fatal to his Section 1983 claims against the municipal Defendants.

comity precluded the court from exercising jurisdiction over plaintiff's challenge to real property assessment on equal protection and due process grounds).

## IV.   OTHER RELIEF

### A.   Request for FBI Investigation

Pan also requests that the Court order the FBI to investigate his claims. Dkt. 19, at 57. This Court "may not compel the prosecuting authorities to commence an investigation or prosecution." *Senior v. Univ. Towers Assocs.*, No. 08 CV 0387 (ENV), 2008 WL 649713, at *4 (E.D.N.Y. Mar. 10, 2008) (citing *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990)). His request is therefore denied. *See, e.g., United States v. Bayon*, No. 18-CR-163-FPG, 2022 WL 109351, at *1 (W.D.N.Y. Jan. 12, 2022) ("Defendant also asks the Court to order the FBI to investigate misconduct allegedly undertaken by personnel at his facility. The Court does not have the authority to grant that relief."); *Perez v. Krugger*, No. 12-CV-740F, 2015 WL 1472132, at *2 (W.D.N.Y. Mar. 31, 2015) ("Plaintiff's request that the court direct the FBI to investigate his claims must also be DENIED as, absent a statute, the court has no authority to do so.").

### B.   Student Loans

In his amended complaint, Pan also names Nelnet as a defendant. Dkt. 19, at 1. He requests "a court order to write off the total balance of [his] Federal student loan." *Id.* at 58. Plaintiff does not put forth a basis for relief but, rather, seeks such loan forgiveness in the event he is not awarded a judgment that covers his outstanding student loans. *Id.* To meet "the minimum constitutional

11

requirements for standing, a plaintiff must allege an 'actual or threatened injury' to himself that is 'fairly traceable' to the allegedly unlawful conduct of the defendant and is 'likely to be redressed by the requested relief.'" *Brody v. Vill. of Port Chester*, 345 F.3d 103, 108–09 (2d Cir. 2003) (quoting *Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106 (2d Cir. 1992)). Pan does not allege that Nelnet engaged in any unlawful conduct. *See* Dkt. 19, at 1. Rather, he alleges that the state and municipal defendants violated his constitutional rights, resulting in financial injury. *See id.* Thus, because Pan's claim against Nelnet "lacks any basis in law or fact," it must be dismissed. *Benitez*, 907 F.2d at 1295.

## V.   LEAVE TO AMEND

While district courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011). Here, any amendment to Pan's claims against the state of New York or its agencies would be futile because the Eleventh Amendment bars such claims. *See, e.g., Kelly v. New York State Unified Ct. Sys.*, No. 21-1633, 2022 WL 1210665, at *3 (2d Cir. Apr. 25, 2022) (holding that amendment to plaintiff's claim would be futile because state sovereign immunity barred his claim); *Letzelter v. Annucci*, No. 20-CV-630-LJV, 2021 WL 2903151, at *1 (W.D.N.Y. July 9, 2021) ("Because sovereign immunity bars [Plaintiff's claim], that claim is dismissed without leave to amend because any amendment would be 'futile.'").

12

Similarly, because the Tax Injunction Act and principles of comity preclude this Court from exercising jurisdiction over Pan's Section 1983 claims against the municipal Defendants, amendment would be futile. *See Izzo v. City of Syracuse*, No. 98-CV-0778 FJS GLS, 2000 WL 1222014, at *4 (N.D.N.Y. Aug. 3, 2000), *aff'd*, 11 F. App'x 31 (2d Cir. 2001) ("[B]oth the Tax Injunction Act and principles of comity require the dismissal of this claim, and renders futile the amendment of his complaint in this regard."). Even if Pan can demonstrate that he timely filed a notice of claim, the Court declines to exercise supplemental jurisdiction over his state-law negligence claims because all federal claims will be dismissed. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage."). Further, amendment to Pan's claim against Nelnet would clearly be futile, as he fails to allege any cause of action. *See O'Neil v. Ponzi*, 394 F. App'x 795, 796–97 (2d Cir. 2010) ("[W]here the substance of the claim pleaded is frivolous on its face, § 1915(e) permits a district court to dismiss the complaint *sua sponte*.") (internal citation and quotation marks omitted).

13

## CONCLUSION

For these reasons, Pan's amended complaint (Dkt. 19) is DISMISSED

pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  The Clerk of Court is directed to

close this case.

SO ORDERED.

DATED:      April 18, 2023
            Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

14